THE WARDER, BUSHNELL & GLESSNER COMPANY v. CHARLES CUTHBERT, Appellant.

**Evidence:** WEIGHT AND ADMISSIBILITY. The defendant objected to the admission in evidence of one of the notes in controversy, on the ground that it was given to the agent after his agency was terminated. *Held,* that upon evidence tending to show that the agent had not at the time been discharged, the testimony was admissible.

GOOD FAITH PURCHASER: *Burden of proof.* One who takes notes from an agent, in violation of the agent's contract with his principal, has the burden of proving that they were taken in good faith, in an action brought against him by the principal for their conversion.

**Principal and Agent:** CONVERSION: *Ratification.* The bringing by the principal of an action against a third party, to whom the agent had fraudulently transferred certain notes taken in his own name, contrary to his agreement with the principal, which provided that

all notes should be taken in the principal's name, is a sufficient ratification of the agent's act in so taking the notes, to enable the principal to sue for their conversion.

**Excessive Verdict.** A verdict will not be set aside for being excessive when there was evidence which would justify a larger award, though the amount awarded can not be, mathematically, demonstrated to be correct.

**Plea and Proof:** ESTOPPEL AND ELECTION. An election of remedies, or an estoppel, to be available as a defense, must be pleaded.

*Appeal from Buena Vista District Court.*—HON. LOT THOMAS, Judge.

## WEDNESDAY, OCTOBER 28, 1896.

ACTION at law for the fraudulent conversion of certain notes. The defense was the statute of limitations, a denial of the allegations of the petition, and a claim that the defendant is a good-faith holder of the notes, for value. The case was tried to a jury, resulting in a verdict and judgment for the plaintiff in the sum of one thousand four hundred dollars. Defendant appeals.—*Affirmed.*

*F. H. Helsell* and *W. A. Helsell* for appellant.

*M. D. O'Connell* and *C. A. Irwin* for appellee.

DEEMER, J.—On the ninth day of November, 1888, the plaintiff appointed one James Woods its agent for the sale of mowers and reapers in and about the town of Newell, in Buena Vista county. The appointment was in writing, and contained the following, among other conditions: "And in case these machines are not all sold during the continuance of this contract, then the first party may, at their option, either charge the entire net price of such unsold machines to the second party, in which case the second party shall make payment for such

unsold machines, either in the notes of responsible farmers due at the dates, and indorsed and guarantied in the form, as hereinafter specified, or in other valuable consideration; but such machines shall remain the property of the Warder, Bushnell and Glessner Company until so paid, or the said first party may elect to retake possession of said machines so unsold, and may require them to be shipped to them to Chicago, Ill.   *   *   *   The second party further agrees, in acting as such agent, to receive these machines and pay the freight and all charges on them, to shelter and take good care of them until sold, and to sell them only to such persons as are known by them to be perfectly good and responsible, or require ample security when credit is given; to take all notes on the blanks of the Warder, Bushnell & Glessner Co., due at the dates above mentioned, and bearing interest at the rate of 8 per cent. from August 1st, 1889, until due, and 10 per cent. after due, and made payable at the bank or express office nearest the residence of the purchaser, each note to be indorsed and guarantied by the party of the second part in the following form, viz.: 'For value received, we hereby guaranty the payment of the within note, and waive protest, demand, and notice of non-payment thereof;' and notes as above for the full amount of these bills to be turned over to the Warder, Bushnell & Glessner Company by the first day of August, 1889. The second party further agrees to remit to Warder, Bushnell & Glessner Company, the proceeds of each and all cash or part-cash sales of Champion Machines, promptly on receipt of the money, remitting the net price, as stated above, less a discount of five per cent. on the net amount of cash remitted." The plaintiff claims that Woods sold many machines under this contract during the year 1888, and received notes therefor, some of which were made payable to plaintiff, some to Woods,

and others, which were originally made payable to plaintiff were subsequently taken up and notes made payable to Woods substituted in their place; that all these notes were given for machinery which plaintiff had shipped to Woods under the contract, and all belonged to and were the property of plaintiff; that about the month of September, 1889, the defendant, well knowing that the notes belonged to plaintiff, fraudulently contrived and confederated with Woods for the purpose of cheating the plaintiff, and induced him (the said Woods) to transfer to said Cuthbert all of said notes, and did then and there receive and convert the said property to his own use, and that Cuthbert well knew, when he received the notes, that Woods had no authority to transfer them. The answer, to which we have heretofore referred, tendered the issues upon which the case was tried, resulting in the verdict and judgment from which the appeal is taken.

It may be well to observe at the outset that there is evidence in the case from which the jury was justified in finding that the defendant was not a good-faith purchaser. That they did so find is evident from the reading of the eleventh instruction which the court gave to the jury. It is as follows: "If the defendant, Cuthbert, received the notes in question in payment of any obligation due from Woods to him, or if he received them, and in consideration therefor assumed the payment of the notes signed by himself and Woods, and payable to one Dunham, which have been referred to during the progress of the trial, and if he took said notes without notice or knowledge that they had been received by Woods as agent of the plaintiff for the purchase price of machines sold by Woods belonging to the plaintiff, then, of course, the defendant cannot be held liable in this action." Now, it is conceded that the notes, for the value of which the plaintiff seeks to make

the defendant liable, were taken by Woods in the course of his business as plaintiff's agent. They were not, however, made payable to plaintiff, nor did Woods use the blank forms which plaintiff gave him for such purpose. The defendant contends that, as the notes were not taken in strict accord with the terms of the appointment, they did not become the property of plaintiff until their taking was ratified by it in some manner, prior to the bringing of this action, and, as the evidence shows no such ratification, the plaintiff cannot recover, because it is not the owner of the notes. It may be that Woods was not authorized to take the notes in the manner he did, and that plaintiff might have rescinded the contracts, or, more properly speaking, refused to ratify them, and recovered back the machines from the purchasers. But this it did not see fit to do. On the contrary, it brought this suit, and by so doing ratified the acts of its agent. What, then, are its rights, in view of the record presented? That it could at any time ratify the conduct of its agent, as against him, will be conceded, and we think it is plain that it could do so as against any one who received the notes with knowledge of the facts, or without value. Such a holder would have no other or greater rights than the agent himself. The agent could not plead his own fraud in an action against him. Nor could one who had obtained the notes from the agent in bad faith, or without value, successfully make such a plea. This is elementary doctrine, and requires no citation of authorities in its support. If any were needed, they can be found collected in Mechem, Ag., section 68, and Wharton, Ag. section 78. The bringing of this action was a sufficient ratification of Woods' acts, and it was not necessary for plaintiff to give either defendant or Woods any other or further notice. *Eadie v. Ashbaugh*, 44 Iowa, 519. It is said, however,

that when plaintiff first learned of the conduct of its agent, it disapproved it, and demanded cash for the value of the notes taken, and that this constituted an election, which will bar plaintiff of its action. A ready answer to this contention is, that defendant did not plead either an election or an estoppel. If he had tendered such an issue, we do not think his complaint is well founded, for the reasons: *First*, that there was evidence from which the jury may have found an election by the plaintiff, to adopt its agent's acts. *Second*, we doubt if there would be an estoppel in this case, for the reason that the jury found that the defendant had no intervening rights as purchaser or lien-holder, which demand protection. See *Woodward v. Harlow*, 28 Vt. 338. And, *third*, the jury may have found a prior implied ratification, growing out of the plaintiff's silence after learning the facts relating to the conduct of their agent. The court instructed the jury in accordance with our view of the law, and did not err in refusing the requests made by defendant.

II. The defendant claims that he was a good-faith purchaser of the notes for value, and he asked an instruction to the effect that before plaintiff could recover it must show that he was not a purchaser in good faith and for value. This instruction was refused. But the court did give the one, numbered 11, which we have heretofore set out, which covers the same ground. The only difference between them is that in one the burden is placed upon the plaintiff to negative the defendant's claim, and in the other it is inferentially placed upon the defendant to establish it. The one given, announced the correct doctrine. But if it did not, there was no prejudice, because the court expressly said to the jury that the burden was on the plaintiff to show that defendant received the notes knowing that they were taken in payment of property belonging

to the plaintiff, and that they were taken by defendant without consideration. The jury were justified in finding for the plaintiff on this issue.

III. Error is assigned on the admission of certain evidence. A witness was produced by plaintiff, who testified to having given a note or notes to Woods some time in August, 1889. It is claimed that his testimony related to a transaction occurring after defendant received the notes from Woods, and at a time when Woods was no longer the agent of the plaintiff. The witness did not pretend to fix the exact date he gave the note or notes. But there was other evidence which tended to show that they were given before Woods' discharge as agent, and that they were received by defendant. One other question is argued regarding the admission of certain evidence, which we need not refer to, for it is disposed of by what has been said with reference to the law of the case.

IV. Lastly, it is insisted that the verdict is without support in the evidence, is excessive, and that by no process of figuring can the result arrived at by the jury be sustained. We h ve said all we care to on the first proposition. As to the second, as there was evidence which would have justified a larger award than the jury gave; their finding is not excessive. With reference to the last contention, it may be that the data are not at hand from which to determine just how the jury arrived at the amount of their verdict. It might have been larger, or it might have been much smaller, or it might have been for the defendant; and in either event we would not be justified in interfering. And while the amount returned cannot be demonstrated to be mathematically correct, yet as the verdict is not excessive, it cannot be impeached.—AFFIRMED.