33923. SOUTHERN DISCOUNT COMPANY *v.* ELLIOTT.

DECIDED APRIL 17, 1952—REHEARING DENIED MAY 1, 1952.

*Tindall & Tindall,* for plaintiff in error.

*R. B. Pullen,* contra.

CARLISLE, J. (After stating the foregoing facts.) The special ground of the amended motion for a new trial, complaining of the direction of the verdict, will be considered in connection with the general grounds. It is apparent from the facts of this case that the legal title to the Chevrolet received in the trade was in Tyson, under the bill of sale made out to Gateway Motor Company by the previous owner thereof, but that Tyson held such title as he had for the benefit of the plaintiff, subject only to whatever interest he might have had in the automobile to protect his profit on its sale and the previous sale of the Oldsmobile, since it was the plaintiff's contention that Tyson in fact owed him the $212.14 remaining out of the $700 received in cash on the first transaction, and had agreed to realize his commission out of the subsequent sale of the Chevrolet. It is also apparent that none of these facts was known to the defendant when it

received a bill of sale to secure debt on its loan to Tyson. The trial judge, in overruling the motion for a new trial, stated that he did so upon the authority of *East Atlanta Bank* v. *Nicholson*, 83 *Ga. App.* 557 (63 S. E. 2d, 699). In that case, however, the plaintiff had legal title to the automobiles which he left for sale with the used-car dealer, and the defendant mortgagor lent the money to the used-car dealer *"solely* upon the representation of the dealer that he owned and was in possession of the automobiles," whereas the dealer had no title in fact. In the present case, the legal title was, so far as regards innocent third parties, in the dealer under a bill of sale to himself, which bill of sale was exhibited to the defendant, and upon reliance in which the loan was made. In *Malsby & Co.* v. *Widincamp*, 24 *Ga. App.* 737 (1) (102 S. E. 178), it was held: "A vendor of personal property impliedly warrants the title thereto, and a bona fide purchaser thereof for value, without notice of any infirmity in the vendor's title, will be protected against loss on account of the same." In *Moye* v. *Waters*, 51 *Ga.* 13, 16, it was stated: "The mere fact that property is purchased by one and paid for with the money of another, does not vest the title to such property as against third persons in the one whose money paid for it. Nor does any legal or equitable right spring out of such a fact in favor of such person against innocent purchasers, who, in good faith, take the title from one who is apparently the true owner and in truth is so, except as to some secret equity of the party whose money has been used. There must be notice of such an equity before it can avoid a title otherwise good." See also *Fahn* v. *Bleckley*, 55 *Ga.* 81; *Johnson* v. *Equitable Securities Co.*, 114 *Ga.* 604 (40 S. E. 787). The plaintiff here knew that Tyson had taken in the Chevrolet in question as a part of the proceeds of the sale of his Oldsmobile; he apparently made no effort to ascertain whether the bill of sale was in such form as to protect his interest therein, and he left the car in the physical possession of the dealer. The fact that his property had gone into the purchase of the Chevrolet, therefore, gave him only a concealed equity as against innocent purchasers for value on the strength of the bill of sale made out to Tyson.

The defendant in error contends that Tyson was merely his agent for the purpose of selling the automobile, with no authority

to borrow money thereon, and therefore, since he acted in excess of his authority, his acts are not binding upon the true owner. This is unquestionably true as between the parties themselves. However, as stated in *Macon, Dublin & Savannah R. Co. v. Heard Bros.*, 27 *Ga. App.* 382 (2) (108 S. E. 481): "While it is a conversion of personal property for one in possession without title to sell the property and receive the proceeds . . although the one in possession was an innocent purchaser from one with no authority to sell from the true owner, yet where the true owner lost possession of the property through the negligent and fraudulent acts of its own agents and employees, such owner could not maintain trover for the property against one who innocently came into possession thereof and who had in good faith disposed of the property without any notice of the claim of the true owner." As a result of the negligence of the plaintiff here and the fraud of his agent Tyson, the latter holds both the legal title, as evidenced by the bill of sale, and physical possession of the property. This being so, the defendant, which relied upon such evidence of title and possession, and which was without notice of the plaintiff's equity, had a right to and interest in the property to the extent of the sums covered by its bill of sale to secure debt.

The trial court erred in denying the motion for new trial.

*Judgment reversed. Gardner, P.J., and Townsend J., concur.*